IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THOMAS DITULLIO,

                    Plaintiff,

          v.

TOWNSHIP OF WASHINGTON, et
al.,

                    Defendants.

Civil Action
No. 06-5671 (JBS)

**OPINION**

**APPEARANCES:**

Katherine D. Hartman, Esq.
ATTORNEYS HARTMAN, CHARTERED
505 S. Lenola Road
Suite 121
Moorestown, NJ 08057-1590
     Counsel for Plaintiff

Howard C. Long, Jr., Esq.
WADE LONG WOOD & KENNEDY, P.A.
1250 Chews Landing Road
Laurel Springs, NJ 08021
          -and-
William M. Tambussi, Esq.
Christopher A. Orlando
BROWN & CONNERY, LLP
360 Haddon Avenue
PO BOX 539
Westmont, NJ 08108
     Counsel for Defendants

**SIMANDLE, District Judge:**

**I.    INTRODUCTION**

This Court considers a motion for summary filed by Defendants Rafael Muniz[1] ("Chief Muniz"), Chief of Police for the Township of Washington Police Department, Steven Rolando ("Detective Rolando"), a detective with Internal Affairs in the Washington Police Department, and the Township of Washington (collectively, "Defendants"), against Plaintiff Thomas DiTullio ("Plaintiff"), a patrol officer in the Washington Township Police Department.[2]  This matter arises out of Plaintiff's allegations that Defendants initiated and executed an Internal Affairs investigation against him in retaliation for a grievance Plaintiff filed and his pursuit of an arbitration hearing on that grievance.  For the reasons laid out below, the Court will deny Defendants' motion for summary judgment [Docket Item 27].

**II.  BACKGROUND**

Plaintiff brings suit against the Township of Washington, Chief Muniz individually and in his official capacity as Chief of Police, and Detective Rolando, individually and in his official

---

[1] Chief Muniz' last name appears to be misspelled on the docket.

[2] Plaintiff's original complaint included four defendants. However, on April 15, 2008, parties stipulated to the dismissal, with prejudice, of all claims against Sergeant Lou Brecht, a Sergeant for the Washington Township Police Department [Docket Items 25 and 26].

capacity, pursuant to 42 U.S.C. § 1983.  Plaintiff seeks a remedy for his employers alleged retaliation against him when he attempted to make use of the Washington Police Department grievance process in violation of the First Amendment.  Because this matter comes before the Court on Defendants' motion for summary judgment, the following factual recital accepts as true all evidence proffered by Plaintiff, as the nonmoving party, with all reasonable inferences drawn in his favor.

Plaintiff is a twelve-year veteran of the Washington Township police and is currently a Patrolman, First Class.  (Pl. Dep. at 8-9.)  Since 2000, Plaintiff has been Vice President of the Fraternal Order of Police ("FOP") Regional Lodge 86.  (Compl. ¶ 9.)  Sometime between late 1999 and October 2000, the Police Department instituted a new promotional procedure, which began with a written exam and would have been followed by a personal interview.  (Pl. Dep. at 14-16; Defs. Br., Ex. 15 at 4.)  Though Plaintiff took the written exam, he was never interviewed about a possible promotion, because the process was suspended.  (Pl. Dep. at 16.)  When, in June, 2003, several officers received promotions even though they had not participated in the suspended promotion process, the Police Benevolent Association ("PBA") submitted grievances on behalf of the employees who had taken the written exam, include Plaintiff.  (Pl. Dep. at 16; Defs. Br., Ex 15 at 4.)  Plaintiff's grievance, filed on July 23, 2003, worked

3

its way through the Washington Police Department grievance procedure, was denied at every level, and in December 2003, the PBA sought arbitration with the New Jersey Public Employment Relations Commission ("PERC").  (Defs. Br, Ex. 15 at 12.)  Plaintiff waited for an arbitrator to hear the case.  (Pl. Dep. at 18.)

On December 17, 2004, then Mayor-elect, Paul Moriarty, who campaigned with a promise to "review all pending grievances with an eye toward quick settlement," asked Corporal Frank Gurcsik to invite Plaintiff to dinner.  (Compl. at ¶ 15.)  At this dinner with Mr. Moriarty were Corporal Gurcsik, who had sought legal advice to regain his position as the Emergency Management Coordinator for Washington Township, Corporal Timothy Attanasi, who had filed a tort claims action against the Township, and Plaintiff, with his pending grievance.  (Compl. ¶¶ 12-15; Defs. Br., Ex. 10.)  Even before food was ordered, Mr. Moriarty asked: "How can I settle your grievances without going to Court or Arbitration?"  (Compl. ¶ 16.)  Corporal Gurcsik told the Mayor-elect that he wanted to return to his position as Emergency Management Coordinator, Corporal Attanasi expressed his desire to become a Sergeant, and Plaintiff explained that he hoped for an assignment as a School Resource Officer and a rise in the ranks to Corporal, but he was willing to forgo back wages.  (Compl. ¶¶ 18-22; Defs. Br., Ex. 10.)  Mr. Moriarty responded that

Plaintiff's request was a "fair resolution" that could be "easily accomplished." (Compl. ¶ 20.)

Plaintiff left the dinner thinking that his grievance had been settled and his new rank and position would be forthcoming. (Compl. ¶¶ 20-21; Pl. Dep. at 21-22.) In fact, neither came. In April, 2005, Plaintiff and Corporal Attanasi met again with now Mayor Moriarty who asked them to be patient, but assured them that he would execute their settlements. (Compl. ¶ 24.) A month later, in May, 2005, Plaintiff again met with the Mayor, this time accompanied by the FOP president, Tom Cushane, and the Mayor again assured Plaintiff that he would get his requested position. (Compl. ¶ 26.) Nevertheless, when on April 24, 2006, Corporal Gurcsik received the Emergency Management Coordinator job he had requested, and left the post of School Resource Officer, that position was filled by Officer Lori Postiglone. (Compl. ¶ 27; Pl. Br. Opp'n, Ex. C.) Plaintiff was left with his grievance pending.

An arbitration hearing on Plaintiff's grievance was scheduled for June 3, 2005, but for some reason not reflected in the record that hearing never took place. (Pl. Br. Opp'n, Ex. D.) On September 12, 2006, Plaintiff's counsel wrote a letter to the Arbitration Center requesting that a hearing be scheduled, and copied John Eastlack, the solicitor for the Washington Township, and Howard Long, counsel defending the Township against

the grievance.  (Id.)  In that letter Plaintiff's counsel
explained:

> I represent Thomas DiTullio who is a member of the
> Washington Township Police Department and PBA Local
> 318.  Officer DiTullio filed a grievance regarding
> the administration of promotions . . .
>
> My client has explained the course of events
> relating to his grievance and it is my
> understanding that this matter has been settled
> between Mr. DiTullio and Mayor Paul Moriarty.
>
> Specifically, Mayor Moriarty agreed to transfer
> Officer DiTullio to the Community Policing Unit and
> promote him to Corporal retroactive to April of
> 2003.  Officer DiTullio agreed to waive any and all
> rights to financial compensation for the difference
> in salary and further to withdraw his grievance.
>
> To date, Mayor Moriarty has not honored his
> settlement.  I request that this matter be
> scheduled for a Motion to Enforce Settlement of the
> Grievance at your earliest convenience.

(Id.)  In response, a hearing was scheduled and then rescheduled
for November 20, 2006.  (Compl. ¶ 29.)

    At some point in the week following the mailing of
Plaintiff's counsel's September 12th letter, either Howard Long
or John Eastlack sent that letter to Chief Muniz.  (Muniz Dep. at
23-24.)  After receiving the letter which included Plaintiff's
request for an arbitration hearing, Chief Muniz called both John
Eastlack and the Mayor to ask them about the letter.  (Id. at
28.)  The Mayor acknowledged that he had dinner with Plaintiff
and others in December 2004, but denied agreeing to any
settlements.  (Id. at 29-30.)  After his conversation with the

6

Mayor, the Chief ordered Detective Rolando, with Internal
Affairs, to investigate the matter.  (Muniz Dep. at 39; Rolando
Dep. at 13-14.)  Chief Muniz was aware, however, that the Mayor
had the authority to settle grievances, even if those settlements
must ultimately be approved by the Township Council.  (Muniz Dep.
at 31.)

On October 10, 2006, Detective Rolando, as part of his
preliminary investigation, spoke to the Mayor about the 2004
dinner.  (Rolando Dep. at 16, 34.)  During that interview with
the Mayor, the Mayor gave Detective Rolando an e-mail from
Officer Gurcsik, which included the text of a message Officer
Gurcsik had written to Plaintiff's counsel and then forwarded to
the Mayor.  (Rolando Dep. at 34.)  In that forwarded e-mail,
which Detective Rolando brought to the Chief, Corporal Gurcsik
described the dinner but wrote that the Mayor did not make any
promises.  (Def. Br., Ex. 10.)  There is nothing in the record to
explain why Corporal Gurcsik forwarded this e-mail, originally
sent to Plaintiff's counsel, to the Mayor.

On November 13, 2006, seven days before his arbitration
hearing was scheduled, without any prior notice, Plaintiff was
called to an Internal Affairs interview.  (Compl. ¶ 30-31;
Rolando Dep. at 40-41.)  Detective Rolando and Sergeant Lou
Brecht, also from Internal Affairs, allegedly intimidated him and
threatened him with possible criminal prosecution.  (Compl. ¶

32.)  The investigators then allegedly ordered Plaintiff to give a taped statement, a copy of which Detective Rolando turned over to Howard Long with the Chief's approval - something the detective had never done before.  (Rolando Dep. at 25-27; Pl. Br. Opp'n, Ex. E.)  After Detective Rolando completed his investigation, during which he repeatedly consulted with Mr. Long, he prepared a written report of his findings.  (Rolando Dep. at 24, 30-31.)  Detective Rolando stated in his deposition that he has lost that report, either due to a computer crash or a lost thumb drive.  (Id.)

On November 28, 2006, Plaintiff filed his Complaint in this matter alleging retaliation due to his pending grievance [Docket Item 1].  On December 7, 2006, the Court signed an Order to Show Cause why the Court should not grant a preliminary injunction prohibiting Defendant from using the tape of Plaintiff's interview and setting a hearing for January 5, 2007 [Docket Item 2].  On January 24, 2007, the charges against Corporal Gurcsik, Corporal Attanasi, and Plaintiff were administratively dismissed. (Def. Br., Ex. 14.)  The Defendants further agreed not to use the tapes of Plaintiff's grievance hearing and Plaintiff's Order to Show Cause was dismissed [Docket Item 18].

Finally, on December 11, 2007, an arbitrator with the New Jersey Public Employment Relations Commission denied and dismissed Plaintiff's grievance, finding Plaintiff credible and

discrediting the Mayor's claims that he did not promise a settlement, but concluding that the Mayor did not have authority to make such a settlement.  (Def. Br., Ex. 15.)

Defendants argue that they are entitled to summary judgment on grounds that (1) Plaintiff has failed to establish that his grievance was a substantial or motivating factor behind the Internal Affairs investigation; (2) even assuming a causal connection, Defendants have established that Plaintiff would have been subjected to an Internal Affairs investigation regardless of his grievance hearing; (3) Chief Muniz and Detective Ronaldo are protected by qualified immunity; and (4) the Township is not vicariously liable for the actions of Chief Muniz or Detective Rolando.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material fact, a court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted). The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party would have the burden of persuasion at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. P'ship of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991). "The burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

"[T]he nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a

genuine issue for trial,' else summary judgment, 'if

appropriate,' will be entered." <u>U.S. v. Premises Known as 717 S.</u>

<u>Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993)

(quoting Fed. R. Civ. P. 56(e))(citations omitted).

> Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery
> and upon motion, against a party who fails to
> make a showing sufficient to establish the
> existence of an element essential to that
> party's case, and on which that party will
> bear the burden of proof at trial.  In such a
> situation, there can be "no genuine issue as
> to any material fact," since a complete
> failure of proof concerning an essential
> element of the nonmoving party's case
> necessarily renders all other facts
> immaterial.

<u>Celotex</u>, 477 U.S. at 323.

## IV.  DISCUSSION

### A.  Qualified Immunity

The Court will begin its discussion with Defendants'

argument that Defendants Muniz and Rolando are entitled to

qualified immunity.  As an "accommodation of competing values,"

qualified immunity strikes a balance by permitting a plaintiff to

recover for constitutional violations where the defendant officer

was "plainly incompetent or . . . knowingly violate[d] the law,"

while immunizing an officer who "made a reasonable mistake about

the legal constraints on his actions." <u>Curley v. Klem</u>, 499 F.3d

199, 206-07 (3d Cir. 2007) (internal quotations and citations

omitted).

11

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court described the two-step inquiry courts undertake in determining whether a governmental officer is entitled to qualified immunity. First, the Court must address whether "the officer's conduct violated a constitutional right." Id. at 201. As the Court of Appeals noted in Curley, the first step of the analysis is "not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley, 499 F.3d at 207. If in this first step the Court finds that there was no constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

"If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." Curley, 499 F.3d at 207 (quoting Scott v. Harris, --- U.S. ----, 127 S. Ct. 1769, 1774 (2007)). In the second step of the analysis, the Court addresses "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 202).

Following this scheme, the Court must first turn to the merits of Plaintiff's constitutional claim. To state a claim for

12

First Amendment retaliation, an employee must demonstrate that
(1) the employee's conduct was protected and (2) that the
employee's conduct was a substantial or motivating factor in the
alleged retaliatory action.  Green v. Phila. Housing Auth., 105
F.3d 882, 885 (3d Cir. 1997).  The first question is a question
of law, the second a question of fact.  Hill v. Borough of
Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).  Defendants concede
that Plaintiff's pursuit of a grievance is conduct protected by
the First Amendment.  (Defs. Br. at 6.)  See San Filippo v.
Bongionvanni, 30 F.3d 424, 442-43 (3d Cir. 1994) (holding that
the filing of a valid grievance through a government-established
grievance process is a protected right under the First
Amendment).  Instead, they argue that Plaintiff has not presented
evidence that Plaintiff's grievance was the cause of the Internal
Affairs investigation.  (Def. Br. at 6-9.)  As discussed at
length below, Plaintiff has offered sufficient evidence from
which a reasonable jury could find that Chief Muniz, acting in
concert with Detective Rolando, initiated and executed the
investigation to deter Plaintiff from pursuing his grievance
(Part IV.C, infra).

Having concluded that there is a sufficient evidentiary
basis from which the fact finder could find a violation of
Plaintiff's First Amendment rights, the Court must determine
whether that right was clearly established.  Curley, 499 F.3d at

207.  The Court finds that since 1994, well before the incidents in this case arose, it has been clearly established within the Third Circuit that Plaintiff has a right to be free from retaliation for pursuing a grievance against his employers.  In San Filippo the court stated:

> [W]hen government - federal or state - formally adopts a mechanism for redress of those grievances for which government is allegedly accountable, it would seem to undermine the Constitution's vital purposes to hold that one who in good faith files an arguably meritorious "petition" invoking that mechanism may be disciplined for such invocation by the very government that in compliance with the petition clause has given the particular mechanism its constitutional imprimatur.

30 F.3d at 442.  The court went on to hold that a public employee is protected under the petition clause of the First Amendment against retaliation for having filed a non-sham grievance, regardless of content.  Id. at 435-43.  Thus, it was well-settled at the time that the Washington Township Police Department instituted the Internal Affairs investigation, and should have been known to a reasonable police detective and chief of police, that it was constitutionally impermissible to retaliate against Plaintiff for his attempt to use the government-established grievance process.

Defendants mistakenly argue that Plaintiff's constitutional right to be free from retaliation for his grievance was not established because Chief Muniz and Detective Rolando did not know about his scheduled hearing and believed they could pursue

14

the Internal Affairs investigation based on the evidence
presented to them.  (Defs. Br. at 22-28.)  The Court notes that
these arguments do not go to whether there was sufficient <u>legal</u>
<u>precedent</u> at the time to put Defendants on notice that their
alleged retaliation was prohibited, but instead address whether
Plaintiff suffered a constitutional injury.  The legal precedent,
as discussed above, is clear.  What Defendants argue is that they
did not institute and execute the Internal Affairs as a form of
retaliation, but instead because they had grounds to suspect a
rule violation.  This material fact is in genuine dispute.  The
Court has found (Part IV.C, <u>infra</u>) that Plaintiff has presented
evidence, giving all favorable inferences to Plaintiff as the
party opposing summary judgment, from which a fact finder could
reasonably determine that the investigation was retaliatory, and
as a consequence the matter must go to the jury.  Defendants
cannot, at this point in these proceedings, rely on the
protection of qualified immunity.

    **B.   Municipal Liability**

    Defendant Township of Washington argues that it cannot be
liable for violating Plaintiff's First Amendment rights because
42 U.S.C. § 1983, the vehicle for Plaintiff's claims, does not
permit respondeat superior liability for Defendants Muniz and
Rolando's alleged misconduct, citing <u>Montgomery v. De Simone</u>, 159
F.3d 120, 126 (3d Cir. 1998).

15

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 694 (1978).  Municipal liability under 42 U.S.C. § 1983 for a constitutional violation "attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion).  It is for the court to determine who is the municipal policymaker, because it is a question of law to be resolved by the trial judge before the case is submitted to the jury. Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989).  Therefore, "[i]n order to ascertain who is a policymaker, 'a court must determine which official has final, unreviewable discretion to make a decision or take action.'" Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1481) (3d Cir. 1990)).  "A 'policy-maker' is an individual with final and unreviewable authority to make a

16

decision." <u>Hernandez v. Borough of Palisades Park Police Dep't</u>, 58 Fed. Appx. 909, 912 (3d Cir. 2003).

As Defendants acknowledge in their brief, Chief Muniz "is the chief executive officer ("CEO") of the entire police department, which includes the [Internal Affairs] Unit." (Defs. Br. at 15; Defs. Br., Ex. 1 § 3:2.3(A).) As such, Chief Muniz had the final and unreviewable authority to institute the Internal Affairs investigation and the municipality is not shielded from liability for his conduct in doing so. Thus, Washington Township is not immune from liability for the alleged retaliatory conduct that was allegedly initiated or ratified by Chief Muniz.

**C.  Plaintiff's First Amendment Claim: Causation**

Having addressed Defendants' claims of immunity, the Court will now turn to the merits of Plaintiff's First Amendment case. Defendants insist that, while Plaintiff's pursuit of a grievance was protected conduct, he has not offered sufficient evidence that his pending grievance was a substantial or motivating factor behind the investigation instigated by Chief Muniz and carried out by Detective Rolando. The Court disagrees and declines to grant summary judgment.

Plaintiff has presented evidence from which a reasonable jury could infer that Defendants instituted and executed an Internal Affairs investigation in retaliation for Plaintiff's

17

renewed pursuit of his grievance.  It is undisputed that
immediately after Chief Muniz learned through Plaintiff's
counsel's letter that Plaintiff was beginning to actively pursue
his grievance, the Chief initiated what would eventually be a
full Internal Affairs investigation of Plaintiff.  (Muniz Dep. at
28, 39.)  Detective Rolando, Plaintiff alleges, intimidated him
and threatened him with criminal prosecution for statements
Plaintiff made to the Mayor, years ago, in response to the
Mayor's express desire to settle a grievance.  (Compl. ¶¶ 16, 19,
33.)  It is similarly agreed that throughout this investigation
Chief Muniz and Detective Rolando worked closely with Howard
Long, who was defending the Township against Plaintiff's
grievance, taking the unusual step of turning over the tape of
Plaintiff's interview to Mr. Long.  (Rolando Dep. at 24-25, 27-
28.)  It is also evident that Plaintiff's interview was scheduled
just seven days before he was set to have an arbitration hearing.
(Compl. ¶ 30.)  Further, the jury could find suspicious Detective
Rolando's claim that he lost the report he prepared, detailing
this investigation.  (Rolando Dep. at 30-31.)  From these facts a
reasonable jury could infer that Defendants attempted to use the
Internal Affairs process to intimidate Plaintiff into dropping
his grievance.

Defendants argue that Plaintiff was subjected to this
investigation not because of his grievance, but because Chief

18

Muniz rightly believed that Plaintiff had violated section 5:12.6
of the Washington Township Police Rules and Regulations.  (Def.
Br. at 9-10.)  That rule reads:

> **Political Intercession - Soliciting**
> Members and employees shall not solicit anyone,
> including elected officials, to intercede with the
> Chief of Police, Mayor, or members of the Council
> in relation to Division of Police matters and
> business.   These matters include, but are not
> limited to, promotions, assignments, disposition of
> pending charges, or findings in a departmental
> trial or other related matters.   This shall not
> preclude, however, the right of a employee to be
> represented   by   legal   counsel   or   a   union
> representative.

(Def. Br., Ex. 1 § 5:12.6.)  In support of this alternative
explanation, Defendants point to the fact that the two other
police officers at the December 2004 dinner were also
investigated.  They also highlight Chief Muniz's claim that he
didn't "recall" getting notice of Plaintiff's hearing, though
"[t]hey might have sent one to me," and Detective Rolando's
outright denial that he knew about the scheduled hearing.  (Muniz
Dep. at 41; Rolando Dep. at 41-42.)

Such an alternative explanation, however, does not
automatically defeat Plaintiff's claim.  Once Defendants have
"articulated a nondiscriminatory reason for the employment action
. . . plaintiff[] may prevail by discrediting that proffered
reason, either circumstantially or directly, or by adducing
evidence, whether circumstantial or direct, that discrimination
was more likely than not a motivating or substantial cause of the

19

adverse action." Stephens v. Kerrigan, 122 F.3d 171, 181 (3d Cir. 1997).  Plaintiff has produced such evidence.

A reasonable jury could look at the timing of the investigation, so close to Plaintiff's renewed pursuit of his grievance and just before his scheduled arbitration hearing, and determine that this purported violation was mere pretense for an intimidating investigation.  See Farell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000) (noting the probative value of temporal proximity in retaliation cases).  The jurors could also look to the disproportionate nature of the investigation, which Plaintiff asserts included threats and intimidation, into a conversation Plaintiff alleges was initiated by the Mayor in order to settle a grievance.  (Compl. ¶ 33.)  Though the investigation of the other two police officers may mitigate against a retaliation claim, it does not foreclose the possibility that Defendants pursued those investigations, in a less intimidating manner, to disguise their true retaliatory purpose.  Finally, it is for the jury, not the Court, to decide whether the testimony of Chief Muniz and Detective Rolando as to their knowledge of the date of the arbitration hearing, in light of the other evidence presented by Plaintiff, is credible or not. See Bushman v. Halm, 798 F.2d 651, 660 (3d Cir. 1986).

In support of their argument that Plaintiff has not submitted evidence from which a reasonable jury could find that

Defendants Chief Muniz and Detective Rolando started and carried out the Internal Affairs investigation in response to Plaintiff's renewed pursuit of his pending grievance, Defendants place great emphasis on Plaintiff's own testimony in deposition.  Plaintiff, who was deposed by Defendants' counsel on the morning of April 2, 2008, before either of the Defendants had testified, gave the following testimony:

> Q.   Who specifically retaliated against you?
>
> A.   I think the mayor specifically retaliated against me.
>
> Q.   How about the chief of police?
>
> A.   I'm not sure about the chief.  I just know that I think the mayor was behind the whole thing.
>
> Q.   How about Detective Rolando?
>
> A.   I think Detective Rolando was probably just doing what he was told, was doing his job.

(Pl. Dep. at 44.)  From this exchange the Court learns only that, before hearing their depositions, Plaintiff was "not sure" that Chief Muniz had retaliated against him and thought that Detective Rolando "probably" was just doing his job.  Though this testimony may prove compelling at trial, it is not dispositive for the purposes of a summary judgment motion where Plaintiff has presented evidence, some of which arose after he was deposed, based on which a reasonable jury could find in his favor.  There is nothing in our jurisprudence which requires a Plaintiff to be

certain, before the fact-finding process is even complete, as to all the facts he must establish later at trial.

Similarly, Defendants find compelling Plaintiff's statement in his deposition that he had "[n]o factual basis" to support his contention that the Mayor played a role in the initiation of the Internal Affairs investigation.  (Pl. Dep. at 48-49.)  However, the Court finds that when read in context it is clear Plaintiff meant only that he had no direct evidence of the Mayor's role. Plaintiff, when pressed for the basis of his contention explained: ". . . I don't know who would possibly initiate, other than the mayor, a complaint like that."  (Pl. Dep. at 49.) Plaintiff throughout his deposition points to circumstantial evidence of retaliation, such as the "intimidating atmosphere" and "threat[s]" in his interview with Detective Rolando and the timing of the investigation which came as he was "pressing forward with" his grievance.  (Pl. Dep. at 44.)  Regardless, Plaintiff made this statement before he heard Chief Muniz and Detective Rolando describe their conversations with the Mayor - conversations that led directly to the Internal Affairs investigation of Plaintiff.  Plaintiff cannot be faulted for what he did not know at the beginning of discovery.  Plaintiff remains free to present such evidence, developed later during the discovery period, at trial.

Finally, Defendants argue that even if Plaintiff has submitted sufficient evidence of the necessary causal connection between his grievance and the subsequent investigation, he cannot survive this summary judgment motion because Defendants have established that Plaintiff would have been subjected to this investigation regardless of his pending grievance.  (Defs. Br. at 9.)  It is true that in a First Amendment retaliation case, once the plaintiff has met his "burden of showing that his constitutionally protected conduct was a 'substantial' or 'motivating factor' in the relevant decision . . . the burden shifts to the defendant to show 'by a preponderance of evidence that it would have reached the same decision even in the absence of the protected conduct.'"  Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  Plaintiff, however, need only meet his own burden in order to survive summary judgment.  Suppan, 203 F.3d at 236.  "In other words, the plaintiff does not need to establish . . . but-for causation[] until trial."  Sunkett v. Misci, 183 F. Supp. 2d 691, 708 (D.N.J. 2002).  Plaintiff has succeeded in submitting evidence to raise a genuine issue as to whether his pending grievance was a motivating factor in the Internal Affairs investigation and so both parties will have an opportunity to present their evidence before a fact finder.

23

**V.    CONCLUSION**

For the foregoing reasons, there are material issues of fact that preclude summary judgment on Plaintiff's First Amendment claim against Defendants Township of Washington, Chief Muniz, and Detective Rolando.  The applications of Defendants Rolando and Muniz for dismissal based upon qualified immunity will be denied, as will the motion of the Township of Washington for dismissal based on municipal immunity for the alleged conduct herein engaged in or ratified by the Township's official policymaker, Chief Muniz.  Therefore the Court will deny Defendants' motion for summary judgment.  An appropriate Order shall be entered.


**October 10, 2008**                          **s/ Jerome B. Simandle**
Date                                      Jerome B. Simandle
                                          U.S. District Judge


24